# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **In re:** § | § | **CASE NO. 16-40841** |
| **MELISSA BREWER,** § | § | **CHAPTER 11 CASE** |
| Debtor. § | § | |
| _____ § | § | |
| **MELISSA BREWER,** § | § | **ADVERSARY NO. _____** |
| Plaintiff, § | § | |
| **V.** § | § | |
| **TEXANS CREDIT UNION,** § | § | |
| Defendant. § | § | |

## COMPLAINT OF DEBTOR TO STRIP OFF LIEN ASSERTED BY TEXANS CREDIT UNION

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **COMES NOW** Melissa Brewer, the above-captioned debtor and plaintiff (the "**Debtor**"), and files this Complaint of Debtor to Strip Off Lien Asserted by Texans Credit Union, and complains of Texans Credit Union ("**TCU**") as follows:

## I.
## JURISDICTION AND PARTIES

    1.    On May 3, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "**Bankruptcy Code**"). On October 13, 2016, the Court entered an order converting this case to a case under chapter 11 of the Bankruptcy Code.

    2.    The Debtor is an individual that resides in McKinney, Texas.

3.  TCU is a credit union that maintains offices in Richardson, Texas and may be served with process by and through its counsel of record, Blalock & Williams, P.C. (c/o Randy Roberts), 4851 LBJ Freeway, Suite 750, Dallas, TX 75244.

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## BACKGROUND

5.  Prior to the Petition Date, the Debtor had purchased a home to house her and her five children in McKinney, Texas (the "**Home**"). To purchase the home, the Debtor took out a first mortgage, in the principal amount of approximately $430,000.00, and a second mortgage, in the principal amount of approximately $54,000.00, from BBVA Compass Bank ("**Compass**") in December 2011.

6.  In March 2012, the Debtor also obtained a home equity loan from Texans Credit Union ("**Texans**"), in the principal amount $180,000.00, a portion of which was used to pay off the second mortgage owed to Compass.

7.  There were several misrepresentations made to Ms. Brewer in connection with the purchase of her home. Part of the misrepresentations included the notion that the property taxes pertaining to the Home were being escrowed through the Debtor's regular mortgage payments, when, in fact, they were not. As a result, property tax liens attached to the Home for failure to pay yearly property taxes.

8.  On May 27, 2013, the Debtor obtained a loan, in the amount of $24,779.12, from Propel Financial Services ("**Propel**") to satisfy property tax liens on the Home accruing in 2012. On April 23, 2014, the Debtor obtained a loan, in the amount of $23,727.70, from Home Tax Solutions ("**HTS**") for property taxes accruing in 2013. On February 26, 2015, the Debtor

increased her loan with HTS to the amount of $50,871.80 to cover property taxes accruing in 2014. On April 25, 2016, the Debtor obtained another loan from HTS, in the amount of $25,677.56, for property taxes accruing in 2015. The total amount of property tax loans exceed $100,000.00 (the "**Property Tax Debt**"). Both Propel and HTS appear to be secured with first- priority liens on the Home, pursuant to Texas statutory law.

9. On September 28, 2016, Compass filed a secured claim (Claim No. 28), in the amount of $521,963.09, which identifies the Home as Compass' collateral.

10. In addition to the liens asserted by Compass and the holders of the Property Tax Debt—which aggregate approximately $623,291.57—Arena Enterprises "("**Arena**") filed a lien on the Home on December 20, 2011, in the amount of $115,000.00, even before the sale of the Home closed and before TCU's loan arose.  The Arena lien arises from certain goods and services provided to the Debtor related to the construction of the Home.

11. With the Arena liens, there are liens on the home of approximately $738,291.57 that take priority over the lien asserted by TCU.

12. In addition, Kings Lake Homeowner's Association, Inc. and Stonebridge Ranch Community Association, Inc. (collectively, the "**HOAs**") both filed secured claims in the respective amounts of $4,842.79 and $2,367.36 for homeowners' association assessments. Attached to each proof of claim are convenants, conditions and restrictions for each HOA that purport to grant each HOA first priority liens subordinate only to the liens held by Compass and the holders of the Property Tax Debt.  Assuming the HOAs properly perfected their liens (aggregating $7,210.15), such liens might trump the lien of TCU, placing TCU's lien behind approximately $745,501.71 in first-priority debt.

13. As of the Petition Date, the home had a fair market value between $525,000.00 (as

determined by the Collin County Tax Appraisal District) and $553,000.00 (as determined by an expert appraiser). Under either estimation, it is clear that TCU's liens, which are junior to the Property Tax Debt liens, the Compass lien, the Arena lien and the HOA liens, is worthless and therefore should be deemed unsecured.

### III.
### CAUSES OF ACTION

**COUNT I:** **STRIP OFF OF LIEN PURSUANT TO SECTION 1123(B)(5) Of THE CODE**

14. Section 1123(b)(5) of the Bankruptcy Code provides, in relevant part, that "a plan may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims . . . ." 11 U.S.C. § 1123(b)(5). The language in 1123(b)(5), which applies in chapter 11 cases, is identical to language in section 1322(b)(2), which applies in chapter 13 cases. *See* 11 U.S.C. §§ 1123(b)(5), 1322(b)(2).

15. It is well-known that section 1123(b)(5) was added to the Bankruptcy Code in 1994 to harmonize the treatment of home mortgage loans in chapter 11 and chapter 13 cases. *See Benafel v. One West Bank, FSB (In re Benafil)*, 462 B.R. 581, 586 (BAP 9th Cir. 2011); *Lievsay v. Western Financial Savings Bank (In re Lievsay)*, 199 B.R. 705, 708 (BAP 9th Cir. 1996) (same) (*citing* H.R.Rep. No. 103-834, 103d. Cong., 2nd Sess. At 11 (1994), U.S. Code Cong. & Admin. News 1994 at 3323, reprinted in Norton Bankruptcy Law and Practice 2d (1995-96 ed.) at 1013.)

16. "Courts have determined that lien stripping is permitted in Chapter 11 bankruptcy proceedings." *Berkebile v. Ocwen Loan Servicing, LLC*, 444 B.R. 326, 330 (Bankr. W.D. Pa. 2011) (*citing* 11 U.S.C. § 1123(b)(5)). Indeed, courts have found that, just like in chapter 13 cases (where section 1322(b)(2) is applicable), section 1123(b)(5) can be used to strip off wholly unsecured liens on homesteads. *See In re Doyle*, No. 3:14-bk-5860-JAF, 2016 WL 6905929, at

*2 (Bankr. M.D. Fla. Nov. 23, 2016) (Applying section 1123(b)(5), the court held that "because the [HOA's] lien which is based on prepetition assessments is second in priority to Well Fargo's first mortgage, which exceeds the value of the Property, the [HOA's] lien can be stripped off."); *see also BAC Home Loans Servicing v. Abdeladir (In re Abdelgadir)*, 455 B.R. 896, 901-02 (BAP 9th Cir. 2011) ("Therefore, in order for § 1123(b)(5) to protect a creditor from modification of its claim, the bankruptcy court must first determine whether the creditor holds a claim secured by a debtor's principal residence. The second determination is whether the value of the creditor's claim makes it secured or wholly unsecured."); *Granite Bank v. Cohen (In re Cohen)*, 267 B.R. 39, 42 (Bankr. D.N.H. 2001) (same); *In re Dewberry*, 2012 WL 5400139, at *1 (Bankr. S.D. Tex. Nov. 5, 2012) (same).

17. At least 5 Circuit Courts of Appeal, including the Fifth Circuit, and two Bankruptcy Appellate Panels have held that the anti-modification provisions in chapters 13 or 11 do "not prohibit avoidance of liens associated with wholly unsecured claims." *Simmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1224-25 (9th Cir. 2020) (*Citing Lane v. W. Interstate Bancorp. (In re Lane)*, 280 F.3d 663, 667-69 (6th Cir. 2002); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2d Cir. 2001); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 288, 295 (5th Cir. 2000); *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 611 (3d. Cir. 2000); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 840 (B.A.P. 1st Cir. 2000); *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 40-41 (B.A.P. 9th Cir. 1997)).

18. In the *Bartee* case, the Court held that a Court must first value a claim under section 506(a) of the Bankruptcy Code and then determine whether such claim can be stripped off pursuant to sections 1322(b)(2) or similar provisions (section 1123(b)(5)).

19. The majority of courts also hold that the valuation of the secured status of a claim

should be the petition date. *See In re Cooper*, No. 11-02804-8-JNC, 2016 WL 3344839, at *2 (Bankr. E.D.N.C. June 8, 2016) ("The majority position is that the petition date is the proper valuation date for . . . lien stripping."); *T.D. Bank, N.A. v. Landry*, 479 B.R. 1, 7-8 (D. Mass. 2012) ("[A] majority of courts, including a majority of courts in this district, have determined that the petition date is the appropriate date for determining whether the anti-modification provision . . . applies to a claim.").

20. The valuation of the Home at or near the time of the Petition Date was between $525,000.00 and $553,000.00. This valuation leaves Arena and TCU with wholly unsecured claims, as there exist senior lienholders (*i.e.*, Compass, Property Tax Debt and HOAs) whose secured claims exceed the value of the Home.

21. Pursuant to 1123(b)(5), because TCU holds solely an unsecured debt with respect to the Home, the Debtor is allowed to strip off TCU's lien through its chapter 11 plan. Accordingly, the Debtor seeks to strip off the lien of TCU in contemplation of filing a chapter 11 plan, which will seek to modify the claims and liens of TCU.

22. The Debtor reserves the right to object to the amount or validity of TCU's claim on other grounds in the future.

**WHEREFORE, PREMISES CONSIDERED,** the Debtor prays that TCU be cited to appear before the Court for the adjudication of this dispute and, after such appearance, the Debtor be awarded a final judgment:

1) deeming that TCU's lien on the Home is stripped off pursuant to section 1123(b)(5);

2) deeming that TCU's claim, if any, is wholly unsecured;

3) such other and further relief that the Debtor is entitled to under law and equity.

Dated: May 18, 2016  Respectfully Submitted,

**FISHERBROYLES, LLP**,

By:  ___/s/ H. Joseph Acosta_____
 H. Joseph Acosta
 State Bar No. 24006731
 4514 Cole Avenue, Ste. 600
 Dallas, Texas 75205
 Tel:  214-614-8939
 Fax:  214-614-8992
 Email:  joseph.acosta@fisherbroyles.com

**ATTORNEYS FOR DEBTOR MELISSA BREWER**